UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/15/2023
```

--------------------------------------------------------------------X
                                                                    :
TROPIC TECHNOLOGIES, INC.,                                          :
                                                                    :
                              Plaintiff,                            :
                                                                    :                22-cv-6043 (LJL)
              -v-                                                   :
                                                                    :                OPINION AND ORDER
VENDR, INC. and STEPHEN ANDERSON,                                   :
                                                                    :
                              Defendants.                           :
                                                                    :
--------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Tropic Technologies, Inc. ("Tropic") moves for an order, pursuant to the "first to file" rule, to enjoin Defendant Stephen Anderson ("Anderson") from prosecuting a related action currently pending before the United States District Court for the Northern District of California. Dkt. No. 38.

For the following reasons, the motion to enjoin Anderson from prosecuting the related action is granted.

**BACKGROUND**

The instant motion involves two separate actions, both pending in federal court. The Court first describes this action (the "New York Action"). It then describes the action pending in the Northern District of California, *Anderson v. Tropic Technologies, Inc.*, 4:23-cv-00806-HSG (N.D. Cal. 2023) (the "California Action"), that Tropic seeks to enjoin.

I.     **The New York Action**

The New York Action was commenced by complaint filed on July 15, 2022, Dkt. No. 1 ("Complaint"), and contains claims by Tropic against Anderson for breach of contract, *id.* ¶¶ 72–79, misappropriation of trade secrets, *id.* ¶¶ 92–97, breach of fiduciary duty, *id.* ¶¶ 98–104, and

violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, *id.* ¶¶ 113–121.

The Complaint also contains claims against Anderson's prospective employer, Vendr, Inc.

("Vendr") for tortious interference with contract, *id.* ¶¶ 80–85, and unfair competition, *id.* ¶¶ 86–

91.  Tropic is a Delaware corporation with its principal place of business in New York.  *Id.* ¶ 8.

The Complaint alleges that Tropic was founded in 2019 and is engaged in the Software as a

Service (or "SaaS") business.  It provides its customers with multiple SaaS products and SaaS

services, including, among other things, (i) a negotiation service that helps negotiate contracts

that Tropic's customers have with their suppliers; (ii) the management of software contracts on

behalf of Tropic's customers, from contract inception to contract execution; and (3) solutions to

monitor Tropic's SaaS application usage.  *Id.* ¶ 17.

From October 2020 to July 2022, Anderson was an employee of Tropic.  *See id.* ¶¶ 24,

43.  In connection with his employment, Anderson entered into an employment agreement

("Employment Agreement") and the Proprietary Information and Invention Assignment

Agreement ("Proprietary Agreement") as a condition of his employment.  *Id.* ¶¶ 31–32.[1]  The

Employment Agreement is dated September 16, 2020, and provides that Anderson is an "at will"

employee.  Dkt. No. 4-3 at 1–2.  Tropic agreed to pay Anderson an annual base salary of

$140,000 payable on the Company's normal payroll schedule.  *Id.* at 1.  Anderson was also

---

[1] The Employment Agreement and Proprietary Agreement are referred to in the Complaint and
deemed incorporated by reference.  *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d
Cir. 2005) ("Where a plaintiff has 'reli[ed] on the terms and effect of a document in drafting the
complaint,' and that document is thus 'integral to the complaint,' we may consider its contents
even if it is not formally incorporated by reference." (alteration in original)); *Essilor Int'l SAS v.
J.P. Morgan Chase Bank, N.A.*, 2023 WL 35176, at *5 (S.D.N.Y. Jan. 4, 2023).  Both
agreements are attached to Tropic's motion for a TRO, Dkt. No. 4, and there is no dispute as to
their authenticity, *see Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (noting that
a court cannot incorporate a document by reference if there is a dispute as to the authenticity or
accuracy of the document).

eligible for a discretionary quarterly bonus provided he "satisfactorily [met] the job requirements set by the Chief Executive Officer" of Tropic based on the savings that he was able to achieve on the contracts he managed. *Id.* The Employment Agreement provides that Anderson would not be eligible for the quarterly bonus if his employment with Tropic ends and that the bonuses "are not guaranteed." *Id.* The Employment Agreement also provides that "[i]t will be recommended" to Tropic's Board of Directors that Anderson be granted an option to purchase 38,000 shares of Tropic's common stock subject to the terms of Tropic's 2019 Equity Incentive Plan. *Id.* at 2.[2]

The Employment Agreement contains a non-compete provision: "for a period of one (1) year following termination of [Anderson's] employment, [he] will not directly or indirectly engage or participate in any business that is competitive in any manner with the business of the Company." *Id.* at 3. The Employment Agreement and Anderson's offer of employment was conditioned upon Anderson's "agreement to, and ongoing compliance with, the terms of the Company's *Proprietary Information and Invention Assignment Agreement*." *Id.* The Employment Agreement has a New York choice of law provision. *Id.*

The Proprietary Agreement is dated as of September 24, 2020. Dkt. No. 4-4 at 1. It requires Anderson, identified as the "Service Provider," to hold Tropic's confidential information "in strictest confidence," not to use it except for the benefit of Tropic, and not to disclose confidential information "to any person, firm or corporation" without the written authorization of Tropic's board of directors. *Id.* § 4(a). It contains a Delaware choice of law provision and a New York choice of forum provision. *Id.* § 15. The choice of forum provision

---

[2]  The 2019 Equity Incentive Plan provides that if Anderson is terminated for cause, he may exercise the options that have vested but the unvested options expire immediately. Dkt. No. 48-1 § 3.3. The 2019 Equity Incentive Plan is governed by Delaware law. *Id.* § 5.

states: "The state and federal courts located in New York, New York shall be the sole and exclusive forum for disputes arising out of or relating to this Agreement." *Id.*

The Complaint alleges that Anderson commenced his employment with Tropic on or around October 5, 2020, when he was residing in California, but that he thereafter moved to Colorado, where he currently resides. Dkt. No. 1 ¶¶ 10, 24. The Complaint further alleges that he was a resident of Colorado for the majority of the misconduct alleged in the complaint. *Id.* ¶ 10. While he was employed by Tropic, Anderson held the senior-level position of Director of Strategic Sourcing and, in connection with that role, he was tasked with developing strategies for negotiating commercial terms with software providers. *Id.* ¶ 24. Anderson was one of Tropic's first ten employees and was hired to develop Tropic's software negotiation services offering. *Id.* In its early stages, Anderson was the sole employee dedicated to this commercially sensitive area. *Id.*

The Complaint grows out of conduct occurring for the most part in June and July 2022. On July 6, 2022, Anderson informed Tropic that he was leaving the company. *Id.* ¶ 43. Between June 21, 2022, and July 6, 2022, Tropic discovered that Anderson had downloaded hundreds of files and documents from Tropic's internal databases and servers. *Id.* ¶ 47. Eventually, Tropic learned that Anderson was leaving the company to join Tropic's direct competitor Vendr, which also provides its customers with SaaS products and SaaS services. *Id.* ¶¶ 19–20, 43. Due to Anderson's decision to leave Tropic for Vendr and his conduct in downloading files and documents from Tropic's internal databases and servers, Tropic formally terminated Anderson for cause on July 7, 2022. *Id.* ¶ 58.

Tropic wrote Anderson and Vendr through legal counsel on July 8, 2022, (1) informing them that Anderson was in violation of the Employment Agreement and the Proprietary

4

Agreement, (2) asking Anderson to immediately return all documents, records and/or information relating in any way to Tropic's clients, employees, and/or business operations, (3) asking Anderson not to commence employment with Vendr, and (4) asking Vendr to immediately withdraw any offer of employment to Anderson. *Id.* ¶¶ 60–62. However, neither Vendr nor Anderson altered their positions. *Id.* ¶ 68. On July 13, 2022, Vendr's outside counsel sent a response letter that confirmed Vendr was going to proceed with hiring Anderson. *Id.* ¶ 66.

Tropic alleges that Anderson's agreement to join Vendr was a violation of the terms of his Employment Agreement, in particular, the non-compete provision. *Id.* ¶ 3. It also alleges that Anderson violated the Proprietary Agreement and "a range of laws prohibiting the theft of sensitive business information," by stealing Tropic's files and documents with the intent to use them to solicit Tropic's clients' suppliers and employees for the ultimate benefit of Vendr and to harm Tropic, whom he blames for not promoting him. *Id.* ¶¶ 4, 57.

## II.    The California Action

The California Action was filed by Anderson on January 26, 2023, six months after the New York Action commenced. Dkt. No. 39-2. Anderson filed the California Action in the Superior Court of the State of California, County of San Francisco, and Tropic removed it to the United States District Court for the Northern District of California on the basis of diversity jurisdiction on February 23, 2023. California Action, Dkt. No. 1.

Anderson is the sole plaintiff in the California Action. The only defendants are Tropic and Does 1 through 50 inclusive. Dkt. No. 39-2. The California Action contains seven causes of action against Tropic. Each of the causes of action pertain to Anderson's employment with Tropic, the Employment Agreement, and the circumstances under which Anderson's employment ended. The first cause of action asserts that Anderson was a resident of California when he signed the Employment Agreement and during the duration of his employment with

Tropic, Dkt. No. 39-2 ¶ 18, and seeks a declaratory judgment under California law that Anderson be relieved of asserting the claims in the California Action as compulsory counterclaims in the New York Action, *id.* ¶¶ 16–21. The second cause of action alleges that Tropic breached the Employment Agreement by failing to pay Anderson his quarterly bonus payments and his final paycheck for work from July 1, 2022 to July 8, 2022. *Id.* ¶¶ 22–26. The third cause of action asserts a claim for breach of the covenant of good faith and fair dealing with respect to the Employment Agreement for the same conduct. *Id.* ¶¶ 27–33. The fourth through sixth causes of action assert claims under the California Labor Code arising out of Tropic's conduct in terminating Anderson's employment for cause. The fourth cause of action alleges that, as a terminated employee, Anderson was entitled to his earned and unpaid wages immediately upon termination. *Id.* ¶¶ 34–38. The fifth cause of action alleges that Tropic violated the California Labor Code by failing to pay Anderson all the wages to which he was entitled, including his final paycheck for work from July 1, 2022 to July 8, 2022. *Id.* ¶¶ 39–43. The sixth cause of action alleges that Tropic violated California law by terminating the stock options granted to Anderson under the Employment Agreement. *Id.* ¶¶ 44–49. Finally, the seventh cause of action asserts a claim for common law conversion based on Tropic's termination of the stock options. *Id.* ¶¶ 50–55.

## PROCEDURAL HISTORY

This Court has devoted substantial time and attention to this case since it was filed on July 15, 2022.

Simultaneous with the filing of the Complaint, Tropic moved by order to show cause for a temporary restraining order ("TRO") and a preliminary injunction restraining Anderson from commencing employment with Vendr or from using, disclosing, or transmitting any of Tropic's confidential or proprietary information. Dkt. No. 4. The Court held a telephonic conference on

the order to show cause on that date, and it set a schedule for the submission of opposition papers and a date for a telephonic hearing on the order to show cause.

The Court originally scheduled the hearing for July 20, 2022, but at the request of the parties, it adjourned the hearing to July 22, 2022.  Dkt. No. 14.  Both Tropic and Anderson submitted evidence at the hearing on the TRO, Dkt. Nos. 4, 8, 10–11, 13, and the Court held the hearing on July 22, 2022.

At the conclusion of the July 22, 2022 hearing, the Court issued an opinion from the bench and an order temporarily enjoining Anderson from commencing employment with Vendr and from retaining, using, or disclosing Tropic's confidential or proprietary information.  Dkt. No. 15.  The Court concluded that Tropic had made a showing that it was likely to succeed on its claim that Anderson had breached the non-compete provision of his Employment Agreement, because the agreement prohibited Tropic from working for any business that was competitive in any manner with the business of Tropic and because Vendr competed, at least in some respects, with Tropic.  Dkt. No. 21 at 8.  The Court held that the Employment Agreement contained a New York choice-of-law provision and thus, under New York law, the non-compete would be enforceable against Anderson even if he were a California resident.  *Id.* at 9 (citing *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68 (S.D.N.Y. 2021)).  But the Court also concluded that Tropic was not a California resident.  *Id.* at 9–10.  The Court next concluded that Tropic had shown a likelihood that it would succeed on its claim that Anderson misappropriated Tropic's trade secrets and confidential information and violated the Proprietary Agreement.  *Id.*  The Court held that the evidence demonstrated that Anderson had downloaded confidential documents from Tropic on the eve of his departure to give to Vendr.  *Id.* at 13–14.  Finally, the Court concluded that Tropic had shown a likelihood that it would prevail on its claim that Vendr had tortuously

interfered with Tropic's contract with Anderson by hiring Anderson notwithstanding the non-compete provision. *Id.* at 9.  The Court rejected Anderson's argument that the non-compete provision in the Employment Agreement was unenforceable against Anderson under California law. *Id.* at 9–12.

The Court scheduled a hearing on the motion for a preliminary injunction for August 4, 2022. *Id.* at 17.  By letter of July 29, 2022, Tropic informed the Court that it had reached a settlement in principle with Vendr and intended to withdraw its request for a preliminary injunction; it asked the Court to adjourn the hearing on the preliminary injunction *sine die*.  Dkt. No. 20.  The Court granted that request.  On September 13, 2022, the Court signed the parties' agreed order of dismissal, dismissing Vendr as a party to this case.  Dkt. No. 25.

On October 4, 2022, the Court entered a case management plan and scheduling order. Dkt. No. 29.  The case management plan provides for all discovery to be completed by May 15, 2023, and a post-discovery conference to be held on May 19, 2023.  *Id.*  Summary judgment motions are due by June 18, 2023.  *Id.*  On October 10, 2022, Anderson answered the Complaint. Dkt. No. 30.  Anderson did not object to the Court's exercise of personal jurisdiction.

On January 9, 2023, after the parties had failed to agree to participate in mediation, *see* Dkt. No. 31 at 2; Dkt. No. 33, Anderson moved for a 90-day extension of fact discovery and deposition schedules so that fact discovery would be completed on May 2, 2023 and depositions would be completed by April 25, 2023, Dkt. No. 32.  The Court granted that request; no party sought, nor did the Court grant an extension of the deadline for the completion of all discovery.[3]

---

[3] The Court denied Tropic's request that it order the parties to mediation but directed counsel "to have a good faith discussion to settle this matter" and to inform the Court on or before January 27, 2022 whether the case had been settled.  Dkt. No. 34.

Tellingly, Anderson did not mention that he intended to file the California Action later that month.

On January 27, 2023, the parties filed a joint letter indicating that they had not been able to settle the case. Dkt. No. 35. Anderson wrote that he had filed the California Action and that he "is seeking dismissal of this action," but that at Tropic's request, counsel had "engaged in discussions that contemplate a global resolution." *Id.* at 2.

On February 28, 2023, Anderson filed a letter motion to compel the production of discovery. Dkt. No. 40. The Court denied that motion without prejudice by memorandum and order of March 3, 2023. Dkt. No. 43.

On February 23, 2023, Tropic filed the instant motion to enjoin Anderson from prosecuting the California Action. Dkt. No. 38. Shortly thereafter, and before the date for the filing of the opposition brief, Anderson filed a motion for a TRO in the California Action asking that the court there issue a TRO and preliminary injunction to void the New York forum selection provision and New York choice of law provision in the Employment Agreement and to order that the California Action be adjudicated in California and that California law govern the dispute. California Action, Dkt. No. 9 at 2. Thereafter, Tropic wrote this Court asking it to hold an "emergency conference" and to issue an order holding the motion in the Northern District of California in abeyance. Dkt. No. 42.

The Court held such a conference on March 6, 2023. *See* Dkt. No. 46. After Tropic indicated that it wished to move for a TRO and the Court stated that it would not treat Tropic's letter as a formal motion absent consent, the Court scheduled motion practice on Tropic's anticipated motion for a TRO. *Id.* Thereafter, on March 7, 2023, Tropic sent an email to the Court informing the Court that it would not be filing a motion for a TRO. Anderson filed his

opposition to the motion for a stay of the California Action on March 9, 2023, Dkt. No. 47, and Tropic replied on March 12, 2023, Dkt. Nos. 48–50.  The Court held a hearing on the motion on March 13, 2023.

## DISCUSSION

Tropic moves for a preliminary injunction, restraining Anderson from continuing to prosecute the California Action during the pendency of the New York Action.  *See* Dkt. No 50 at 1–2.  It argues that the two actions are essentially identical: while Tropic claims in the New York Action that Anderson breached the Employment Agreement and Proprietary Agreement by misappropriating trade secrets and working for a competitor, Anderson claims in the California Action that Tropic breached the Employment Agreement by improperly firing Anderson for cause.  *See* Dkt. No. 39 at 4.  Tropic also argues that Anderson's claims in the California action are compulsory counterclaims.  *Id.* at 7–8.

The first-filed rule provides that "when a case is brought in one federal district court [and the complaint] embraces essentially the same transactions as those in a case pending in another federal district court, the latter court may enjoin the suitor in the more recently commenced case from taking any further action in the prosecution of that case."  *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 722–23 (2d Cir. 2010) (quoting *National Equip. Rental, Ltd. v. Fowler,* 287 F.2d 43, 45 (2d Cir. 1961)).  Thus, "[w]here there are two competing lawsuits, the first suit should have priority."  *Emp'rs Ins. Of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 274–75 (2d Cir. 2008) (alteration in original) (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)); *see Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1203 (2d Cir. 1970) (Friendly, J) (holding that the "general rule [is] that in the absence of sound reasons the second action should give way to the first").  "The rule 'embodies considerations of judicial administration and conservation of resources by avoiding

duplicative litigation and honoring the plaintiff's choice of forum.'" *Berkley Assurance Co. v. MacDonald-Miller Facility Sols., Inc.*, 2019 WL 6841419, at *3 (S.D.N.Y. Dec. 16, 2019) (quoting *Emp'rs Ins. of Wausau*, 522 F.3d at 275).

The instant motion presents two issues for the Court's consideration: (1) which court should decide whether this action or the California Action enjoys precedence; and (2) assuming that this Court should decide on the applicability of the first-filed rule, whether this action should proceed and Anderson should be enjoined from prosecuting the California Action.

There is a "bright-line rule" in this Circuit that "[t]he court before which the first-filed action was brought determines which forum will hear the case." *Berkley Assurance Co.*, 2019 WL 6841419, at *3 (quoting *MSK Ins., Ltd. v. Emp'rs Reinsurance Corp.*, 212 F. Supp. 2d 266, 267 (S.D.N.Y. 2002)); *see MacDermid Printing Sols., LLC v. E.I. Du Pont De Nemours & Co.*, 2015 WL 4165823, at *2 (D. Conn. May 21, 2015)). A different principle would generate the very confusion and duplication of judicial resources that the first-filed rule is designed to avoid. Each court would be free to decide whether the second-filed action is subject to the first-filed rule. Anderson does not dispute that it is up to this Court and not the Northern District of California to decide whether the first-filed rule should apply. Thus, recognizing that Anderson responded to the instant motion for a preliminary injunction with an application for a TRO in the California Action, this Court will nonetheless proceed to address the application of the first-filed rule.

In deciding whether the first-filed rule applies, the Court, in turn, considers two additional questions: (1) whether the two cases embrace essentially the same transactions; and (2) whether any of the exceptions to the first-filed rule apply. Tropic contends that the two cases relate to the same transaction—Anderson's departure from Tropic—and involve the same

11

parties, the same time period, the same evidence, and the same witnesses.  Dkt. No. 39 at 4.  It also argues that the two suits rely on the terms of the agreements governing Anderson's employment with Tropic.  *Id.* at 8.  Tropic thus argues that the first-filed rule applies.

Anderson does not dispute that the cases relate to the same transaction, involve an interpretation of the same Employment Agreement, and involve the same parties, time period, evidence, and witnesses.  *See generally* Dkt. No. 47.  He argues instead that the first-filed doctrine does not apply because the two actions do not allege common violations of law.  The actions, according to Anderson, allege different breaches of the Employment Agreement: while the New York Action relates to Anderson's alleged misappropriation of trade secrets and decision to join a competitor, the California Action relates to Tropic's violation of California labor law and failure to pay Anderson the bonuses he claims were due.  *Id.* at 5–6.

Anderson relies on language found in some cases that "the core question is whether there are common violations of law alleged."  *Liberty Mut. Ins. Co. v. Fairbanks*, 17 F. Supp. 3d 385, 393 (S.D.N.Y. 2014); *see also Armouth Int'l, Inc. v. Fallas*, 2021 WL 795448, at *4 (S.D.N.Y. Mar. 1, 2021) (quoting the same language); *Santana v. Cavalry Portfolio Servs., LLC*, 2019 WL 6173672, at *3 (S.D.N.Y. Nov. 19, 2019) (quoting the same language).  Anderson reasons that because none of the claims in the California Action are identical to the claims in the New York Action, there are no "common violations of law alleged" and the first-filed doctrine does not apply.

The rule that Anderson urges does not reflect the law of this Circuit.  The second-filed lawsuit need not be a precise copycat of the first-filed lawsuit for the first-filed doctrine to apply. Were that the case, every defendant to a breach of contract claim could engage in the forum-shopping that the first-filed doctrine is designed to prevent and impose the very costs on the

judicial system that the doctrine is designed to avoid; the defendant in the first-filed action could, in a second-filed action, simply allege that its contractual counterparty had failed to perform or that the contract was induced by fraud or was unenforceable.  The violations of law would not strictly be the identical—in the first, the plaintiff would be alleging a breach and in the second, the plaintiff (*i.e.*, defendant in the first filed action) would be alleging a different breach or fraud. If the second lawsuit alleged non-performance by the first-filed plaintiff, to adopt Anderson's language here, the claims in the two lawsuits would "allege different breaches and relate to different and unrelated provisions" of the contract at issue.  Dkt. No. 47 at 5.  But to permit the two lawsuits to go forward would be to sanction the very evil that the first-filed doctrine is intended to avoid.  *See Fowler*, 287 F.2d at 45–46 (affirming injunction of second-filed action in Alabama that asserted one claim that was identical to the defensive counterclaim in the New York action and a second claim of "fraud in the inducement of the agreement").

Indeed, in *Liberty Mutual Insurance Co.*, 17 F. Supp. 3d 385, itself—the very case that Anderson cites to support his argument—the court found that the first-filed doctrine applied even though the claims in the actions were styled differently.  The court concluded that the fact that the claims in the two lawsuits may be "styled somewhat differently" does not defeat application of the first-filed doctrine if "[t]he facts and issues in the disputes between th[e] parties are . . . the same in both actions."  *Id.* at 393.  And the very case that *Liberty Mutual* cites for the principle that "the core question is whether there are common violations of law," *id.* at 393 (internal quotation marks and citation omitted), states that the "central question" is broader than the one that Anderson would have this Court apply: whether the two actions "concern[] the same parties and involved the same general dispute," *U.S. ex rel. Cestra v. Cephalon, Inc.*, 2014 WL 1087960, at *3 (S.D.N.Y. Mar. 19, 2014) (quoting *Gyadu v. Hartford Ins. Co.*, 1998 WL 30470,

at *2 (2d Cir. Jan. 28, 1998) (summary order)).  Stated slightly differently, the central question is

whether the two actions share "sufficient overlapping factual and legal issues."  *Id.* (quoting

*MasterCard Int'l, Inc. v. Lexcel Solutions, Inc.*, 2004 WL 1368299, at *8 (S.D.N.Y. June 16,

2004)).  Thus, "[f]or the first-filed rule to apply, the parties and issues must be substantially

similar, but they need not be identical."  *Santana*, 2019 WL 6173672, at *3 (S.D.N.Y. Nov. 19,

2019).

　　The New York Action and the California Action share extensive overlapping factual and

legal issues.  At issue in the California Action is Anderson's claim for a declaratory judgment

that he was a resident of California when he signed the Employment Agreement and during the

duration of his employment with Tropic, Dkt. No. 39-2 ¶ 18, that Section 925(a) of the

California Labor Code applies, *id.* ¶ 20, and that the Court should declare the New York choice-

of-law provision in the Employment Agreement to be void, *id.* ¶ 21.

　　The resolution of whether the choice-of-law provision applies is also at the heart of

Anderson's claims in California.  His assertions that Tropic owes him bonuses under the

Employment Agreement, that he is due his final paycheck, and that Tropic violated California

law and engaged in conversion by cancelling his stock options all rely on the underlying premise

that California law applies in this case.  The identical issue—the enforceability of the New York

choice-of law provision—is at the heart of Tropic's first and fifth causes of action in the New

York Action.  The first cause of action alleges that Anderson breached the non-compete

provision of the Employment Agreement by accepting employment with Vendr, Tropic's

competitor, within one year of his departure from Tropic, Dkt. No. 1 ¶¶ 72–79, and the fifth

cause of action alleges that Anderson breached his fiduciary duty and duty of loyalty to Tropic

by, *inter alia*, "joining a direct competitor in violation of his Employment Agreement," *id.* ¶

14

101.[4]  Anderson does not dispute in the New York Action that "he informed Tropic of his intention to join Vendr."  Dkt. No. 30 ¶ 3 (Answer to Complaint).  His defense has been that California law applies and that under California law, the provisions of the Employment Agreement upon which Tropic relies in its claims for relief are unenforceable.  Dkt. No. 9 at 4–5.  One of the central legal issues in the New York Action thus precisely overlaps with the central legal issue in the California Action.  In the New York Action, the Court will have to determine whether Anderson was a California resident at the time he signed the Employment Agreement and during the duration of his employment with Tropic and thus whether Section 925(c) of the California Labor Cope applies.  Dkt. No. 39-2 ¶¶ 18, 20.  That issue is critical: if California law applies, then, under California Business & Professions Code § 16600, the noncompete provisions of the Employment Agreement are likely unenforceable.  *See* Cal. Bus. & Prof. Code § 16600 ("[E]very contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.").  The resolution of each action thus turns directly upon the question of whether Section 925(a) applies.

---

[4] Anderson argues that Tropic should be deemed to have admitted that he was a resident of California when he entered into the Employment Agreement and throughout the course of his employment with Tropic because it did not timely respond to Anderson's requests for admission. Dkt. No. 47 at 8–9.  Tropic has responded that at a meet and confer held with counsel for Anderson on February 1, 2023, Tropic explained that it was putting certain discovery aside, including providing answers to the requests for admission, in order to focus on settlement efforts. Dkt. No. 49 ¶¶ 2–3.  Anderson did not object.  *Id.* ¶ 4.  The Court has authority under Federal Rule of Civil Procedure 36(a)(3) to grant an extension of time to respond to a request for admission *nunc pro tunc*.  *See* 7 Moore's Federal Practice § 36.03(1) (2023) ("Courts have granted extensions of time to respond to requests for admission after the expiration of 30 days."). There has been no showing of bad faith on the part of Tropic in focusing on settlement and in failing to respond to the requests for admission.  Accordingly, the Court declines to deem the non-responses as admissions and *nunc pro tunc* grants a thirty-day extension of the time to respond.

Moreover, even leaving aside the complete overlap that Anderson's first cause of action in the California Action shares with Tropic's first cause of action in the New York Action and the substantial overlap it shares with Tropic's fifth cause of action, Anderson reads the Complaint too narrowly in arguing that it does not raise factual and legal questions identical to those in the California Action.  The relief sought by Tropic in the New York Action includes "the forfeiture of all compensation provided to Anderson under the Employment Agreement." Dkt. No. 1 at ECF p. 22.  Tropic alleges that "[b]y virtue of his conduct, Anderson has breached his obligations under the Employment Agreement and should be required to forfeit all compensation that he received thereunder." *Id.* ¶ 75.  Of course, that compensation includes the compensation that Anderson seeks in the California Action.  As discussed, it is not necessary for the first-filed doctrine to apply that the two actions are "mirror-image lawsuits between the same parties . . filed in different venues." *Cephalon*, 2014 WL 1087960 at *4.  But that is precisely what Tropic's first cause of action in the New York Action and Plaintiff's claims in the California Action are; Tropic seeks an order in the New York Action requiring Plaintiff to turn over his compensation, including the compensation that Anderson alleges in the California Action is owed to him.

Furthermore, even if there are claims in the California Action that do not precisely overlap with the claims in the New York Action, "the existence of non-overlapping claims or parties does not disqualify lawsuits from the first-filed rule." *Liberty Mut. Ins. Co.*, 17 F. Supp. 3d at 393; *see Horowitz v. 148 S. Emerson Assocs., LLC*, 2016 WL 11508981, at *11 (E.D.N.Y. Oct. 19, 2016) (holding that two actions "need not be identical but the claims and rights raised in the two actions must not differ substantially" (citation omitted)), *aff'd in part and vacated in part on other grounds* 888 F.3d 13 (2d Cir. 2018).  For that and other reasons, Anderson's argument

that "under California law," he "is entitled to the bonus payments he seeks irrespective of whether he resigned or was terminated," Dkt. No. 47 at 6, is insufficient to avoid the first-filed rule. The argument again presumes one of the central questions in the New York Action: whether California law applies. And, as discussed below, Tropic's proposed relief does not ask that Anderson bring his California statutory claims in this Court. However, to the extent that Anderson chooses to do so, the Court is capable of applying California law.

Tropic has also established that no exception to the first-filed rule applies here. "The first-filed rule admits of two exceptions: the second-filed action will receive priority only if either (1) the 'balance of convenience' or (2) 'special circumstances' favor the second-filed action." *Berkley Assurance Co.*, 2019 WL 6841419, at *4. The Court considers the "balance of convenience" because the first-filed doctrine is not "an invariable mandate," but only a presumption, and "still requires selection of the more appropriate forum." *Emps. Ins. of Wausau*, 522 F.3d at 275. The factors relevant to the "balance of convenience" analysis "are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." *Id.* "Among these factors are: '(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.'" *Id.* (quoting *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 106–07 (2d Cir. 2006)). Those factors weigh in favor of Tropic. Tropic filed this lawsuit in New York because the Proprietary Agreement required it to do so. That agreement provides: "[t]he state and federal courts located in New York, New York shall be the sole and exclusive forum for disputes arising out of or relating to this Agreement." Dkt. No. 4-4 ¶ 15. The choice of New

York is not the result of forum-shopping.  Further, Anderson cannot complain that the forum is inconvenient for him or his witnesses or that the private-interest factors favor him because he agreed in advance to a New York forum.  The mandatory forum selection clause is "given controlling weight in all but the most exceptional cases."  *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 63 (2013); *see HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *6-7 (S.D.N.Y. Mar. 10, 2021).

Anderson also does not argue that the public interest factors defeat the presumption in favor of the first-filed action.  The public interest factors include: "the forum's familiarity with the governing law" and "trial efficiency and the interest of justice, based on the totality of the circumstances."  *Liberty Mut. Ins. Co.*, 17 F. Supp. 3d at 396 (cleaned up).  The parties disagree on the law that governs this dispute; Tropic contends it is New York law while Anderson contends that California law controls because he is a California resident.  The Court has determined as a preliminary matter that Anderson's contention is not supported by the evidence, but even assuming California law governs, this factor "is typically 'to be accorded little weight . . . because federal courts are deemed capable of applying the substantive law of other states.'"  *Id.* (quoting *Astor Holdings, Inc. v. Roski*, 2002 WL 72936, at *13 (S.D.N.Y. July 17, 2002)).  And trial efficiency and the interests of justice favor the New York forum.  This Court has already devoted resources to the case while the California Action is at its very incipiency. *See City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (affirming injunction against parallel litigation in California in connection with second-filed action where New York court already spent considerable time and effort on the case).  Additionally, all of the claims that Anderson has brought in California are capable of having been brought in this action.  And

Anderson filed the California Action only after experiencing adverse rulings in this case, raising the specter of forum shopping.

"[T]he 'special circumstances' in which a district court may dismiss the first-filed case without this analysis are quite rare." *Emps. Ins. of Wausau*, 522 F.3d at 275.  The Second Circuit has identified two: where the first-filed lawsuit is an improper anticipatory declaratory judgment action and "where forum shopping *alone* motivated the choice of the situs for the first suit." *Id.* (quoting *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir.1969)). Neither applies here.  This case was not an anticipatory declaratory judgment action.  Tropic filed suit and sought a TRO because Anderson was on the eve of joining Tropic's alleged competitor and to protect its rights under the Employment Agreement and the Proprietary Agreement.  The exception for forum shopping applies only when "the first-filing plaintiff [has] engage[d] in some manipulative or deceptive behavior, or the ties between the litigation and the first forum [are] so tenuous or de minimis that a full 'balance of convenience' analysis would not be necessary to determine that the second forum is more appropriate than the first." *Id.* at 276. "[T]his exception cannot apply '[i]n light of the parties' prior consent to jurisdiction in the courts of New York.'" *Berkleyu Assurance Co.*, 2019 WL 6841419, at *7 (quoting *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 55 (S.D.N.Y. 2001)).

Anderson also argues that Tropic has not satisfied the standards for mandatory injunctive relief in this Circuit including a showing of irreparable harm.  Dkt. No. 47 at 4-5.  But the case upon which Anderson relies, *Cachillo v. Insmed, Inc.*, 638 F.3d 401 (2d Cir. 2011), involved a request by a plaintiff who suffered from type 1 Myotonic Muscular Dystrophy for an order directing the defendant pharmaceutical company to give her compassionate use of a drug the defendant manufactured.  *See id.* at 403.  In short, the case was a classic example of a party

seeking a mandatory preliminary injunction where "[a] showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks and citation omitted). Tropic's motion is not based on Federal Rule of Civil Procedure 65, *see* Dkt. No. 38 (notice of motion not invoking Rule 65), and does not rely upon the principles of equity upon which the standards for preliminary injunctive relief under that rule rests. The first-filed rule is grounded in the "inherent power of the court to regulate actions before it"; it is not based on any specific rule of civil procedure. *See* Wright & Miller, Federal Practice & Procedure § 1360; *cf. Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]the power to stay proceedings is incidental to the power in every court to control the disposition of the causes on its docket."). The first-filed rule is intended to protect the interest in "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Cephalon*, 2014 WL 1087960, at \*4 (quoting *Kerotest Mfg. Co. v. Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)); *see Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . the general principle is to avoid duplicative litigation."); *Simmons*, 878 F.2d at 80. It protects the court in the first-filed action from the "loss of control" of the action before it. *Fowler*, 287 F.2d at 46. Thus, it is not only the parties who are entitled to remain "free from the vexation of concurrent litigation over the same subject matter," *id.* (quoting *Adams v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991)), it is also the courts. "Yet another purpose of the doctrine involves 'considerations of comity' that militate against multiple district courts simultaneously entertaining competing lawsuits." *Cephalon*, 2014 WL 1087960, at \*4 (citation omitted). For those reasons, the authority of the court to enjoin a second-filed action that threatens the court's own jurisdiction does not rest upon whether

the plaintiff is able to make a showing of irreparable injury. *See Fowler*, 287 F.2d at 46

(affirming injunction with no showing of irreparable injury); *In re Martin-Trigona*, 737 F.2d

1254, 1261 (2d Cir. 1984) (affirming district court's issuance of a filing injunction

notwithstanding the absence of any party showing irreparable harm because "[f]ederal courts

have both the inherent power and the constitutional obligation to protect their jurisdiction from

conduct which impairs their ability to carry out Article III functions.  If such power did not exist,

or if its exercise were somehow dependent . . . upon the entitlement of a private party to

injunctive relief, the independence and constitutional role of Article III courts would be

endangered.").[5]

Finally, Anderson argues that Section 925 of the California Labor Code permits him to

litigate his California law issues in a California forum and precludes application of the first-filed

doctrine, even if the doctrine otherwise were applicable.  Dkt. No. 47 at 7.  Anderson cites no

case for the proposition that a state law can overcome a principle designed to ensure the wise,

smooth, and efficient administration of federal judicial resources.  But the Court need not resolve

that issue to address Tropic's motion to enjoin Anderson temporarily from pursuing the

California Action.  Section 925(a) does not, on its face, grant a California resident the right to an

---

[5] There is authority that a district court confronted with a request to enjoin parties from
concurrently pursuing a second action should allow the court in the second action to stay the
action prior to formally issuing an injunction. *See Berkley Assurance Co.*, 2019 WL 6841419, at
7 & n.8 (denying injunction "without prejudice to renewal in the event that injunctive relief
becomes necessary to ensure this suit's priority"); *Fam. Med. Pharmacy, LLC v. Impax Lab'ys,
Inc.*, 2017 WL 8294283, at *1 (S.D. Ala. May 23, 2017) (ruling that court in second-filed action
should decide whether to issue a stay before court in first filed action issues an injunction).  The
Court declines to follow that practice which stands in tension with the proposition that the court
of the first-filed action should decide in the first instance whether the first-filed doctrine applies.
Tropic has brought its motion before this Court, and it did so before Anderson filed his motion
for a TRO in California.  Under these circumstances, there is no reason for the Court to withhold
its order.  In addition, with the consent of the parties, the Court has conferred with the judge in
the California Action, and he has been made aware of the Court's intention to enter this Order.

immediate forum in California to adjudicate a claim arising in California.  The provision states

that "[a]n employer shall not require an employee who resides and works in California, as a

condition of employment, to agree to a provision that would . . . (1) Require the employee to

adjudicate outside of California a claim arising in California [or] (2) Deprive the employee of the

substantive protection of California law with respect to a controversy arising in California."  Cal.

Lab. Code § 925(a).  But, leaving aside the disputed question of whether Anderson resides in

California or whether the controversy arises in California,[6] Tropic's motion does not seek to

require Anderson to litigate in New York the claims he is asserting in the California Action.

Tropic seeks only to prevent Anderson from litigating those claims in California during the

pendency of the New York Action.  Section 925(a) would not preclude a California court—on its

own motion or on the motion of a defendant—from granting a stay of an action to ensure the

wise administration of judicial resources.  Anderson cites no authority for the proposition that

Section 925(a) prevents federal courts, applying long-established rules of federal law, from doing

the same thing.  In short, the requested order thus does not run afoul of Section 925(a).

Anderson will not be required to litigate his claims anywhere other than California.  The order

would just have him wait to do so and take the risk, incident to any case where the parties may

litigate in more than one forum, that the dispute in New York will have preclusive effect on

issues he would want to raise in California.[7]

---

[6] The Court pauses to note the significant question of whether any of the claims in this case or in
the California Action arise in California.  *See Bromlow v. D& M Carriers, LLC*, 438 F. Supp. 3d
1021, 1030 (N.D. Cal. 2020) (collecting cases) ("[D]istrict courts have held that section 925 does
not control claims arising outside of California or claims by plaintiffs who do not primarily
reside and work in California").  Tropic's principal place of business is in New York.  Dkt. No. 1
¶ 8.  At the time his employment was terminated, Anderson resided outside California.  *Id.* ¶ 10.
Vendr's principal place of business is in Massachusetts.  *Id.* ¶ 9.  Thus, there is a question of
whether any of the claims in this case in fact arose in California.
[7] For that reason, the Court need not address the issue of whether the claims Anderson seeks to

## CONCLUSION

The motion for an order enjoining Anderson from prosecuting the California Action is

GRANTED.


SO ORDERED.


Dated: March 15, 2023
     New York, New York                                            LEWIS J. LIMAN
                                                          United States District Judge

---

litigate in California constitute compulsory counterclaims, except to state that whether they are compulsory or permissive, they could be litigated in this action.  The questions of (1) whether the claims are to be considered compulsory counterclaims and whether therefore Anderson would be required to litigate them in this action or (2) whether Section 925(a) might preempt the ordinary application of Rule 13 and permit a California resident to litigate otherwise compulsory counterclaims in a separate California action will have to await Anderson's continued pursuit of his claims in California and a motion by Tropic, brought in the California Action, that the claims are barred under Rule 13.  The Court does not presume to conclude the answer to either question.